IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ADVANCED CELLULAR SYSTEMS, CORP.<br><br>  Plaintiff<br><br>  v.<br><br>PUERTO RICO TELEPHONE COMPANY;<br>CELULARES TELEFONICA<br><br>  Defendants | Civil No. 97-2511 (JAF)<br><br>Civil Action: Antitrust Laws;<br>Discriminatory Pricing; Breach of Contract;<br>Tort; Collection of Monies<br><br>Jury Trial Demanded |

**FIRST AMENDED COMPLAINT**

TO THE HONORABLE COURT:

Comes now plaintiff Advanced Cellular Systems, Corp. ("ACS"), through the undersigned attorneys and respectfully states and prays as follows:

   **I.   Jurisdiction of this Court**

This action arises under 28 U.S.C.A. § 1334, 28 U.S.C.A. § 1408, 28 U.S.C.A. § 1409; the Federal Communications Act of 1934, as amended, 47 U.S.C. §201(b) and §202(a), which declares unlawful and discriminatory any charge or practice by a common carrier that is unfair, unjust or unreasonable, and the Federal Communications Rules and Regulations, 47 C.F.R. §20.12(b) (formerly 47 C.F.R. 22.90(e)), which requires a common carrier licensee to permit unrestricted resale of its services. This action also arises under the Federal Antitrust Laws, i.e., the Sherman Act, 15 U.S.C. §1-7. the Clayton Act, 15 U.S.C. §12-27, which prohibits concerted and/or intended actions and practices in the form for discriminator, unfair and unjust pricing, tariffs, rates or charges, services or regulations that attempt and/or having the effect of

interfering with commence restricting free and open competition; the Robinson-Patman Price Discrimination Act, 15 U.S.C. §13(a), 13(b), 21(a), which prohibits price discrimination between different purchasers of the same commodity where the effect of such discrimination may be substantially to lessen competition, and breach of contract, 31 L.P.R.A. §3371, et seq., state antitrust laws-i.e., Puerto Rico Anti-Monopoly Act, 10 L.P.R.A. §260, et seq., tort under common law and pendent state law of applicable provisions of the Civil Code of Puerto Rico, 31 L.P.R.A. §5141; applicable legislation from the Civil Code of Puerto Rico pertaining to collection of monies; 31 L.P.R.A. § 2994 *et. seq.* and other related state laws. This Honorable Court has subject matter jurisdiction over these claims pursuant to Section 207 of the Communications Act of 1934, 47 U.S.C. §207, as well as the pendent state law claims. In addition, the amount in controversy involving the claims in the case of caption exceeds the jurisdictional requirement, exclusive of interests and costs.

**II.     The Parties**

1.      Advanced Cellular Systems, Inc. (hereinafter "ACS"), is a corporation duly organized in the Commonwealth of Puerto Rico since 1986. ACS engages in the business of wholesale purchase of cellular telephone numbers and communication services from licensed facilities-based carriers and of reselling such numbers and services to retail customers. ACS is also a debtor in possession under the provisions of Chapter 11 of the Bankruptcy Code – civil case number 98-07437; 98-07438.

2.      Puerto Rico Telephone Company, Inc. (hereinafter "PRTC"), is a corporation duly organized in the State of Delaware and authorized to do business in the Commonwealth of Puerto Rico. PRTC is duly licensed by the Federal Communications Commission (hereinafter

"FCC") as a local exchange carrier providing inter-operational telephone exchange services or exchange access in Puerto Rico for local and continental United States, being the main local exchange carrier provider in Puerto Rico. Furthermore, PRTC also has in the past and/or is presently providing commercial mobile radio services.

3. During all other periods of time relevant to this action Celulares Telefónica de Puerto Rico (hereinafter "CT"), is an affiliated and/or unincorporated division of PRTC, with CT and PRTC having integrated ownership. CT, on information and belief, is a commercial mobile radio service provider for cellular services for wholesale and retail customers.

### III. ACS Relationship with PRTC/CT

4. The geographic market for the cellular services at issue in this action is the Commonwealth of Puerto Rico. This territory encompasses a single market for cellular services based upon the FCC licensing scheme that provides for two wholesale cellular providers in the Puerto Rico market. This market can be divided into the wholesale cellular market and retail cellular market.

5. The wholesale cellular market constitutes a distinct market, because only certain companies have the ability to provide direct or wholesale access to the local exchange network which is necessary to provide retail cellular services. PRTC/CT, and since approximately 1993-1994 Cellular One, are the only facilities-based companies in Puerto Rico with licenses to provide wholesale cellular services up until approximately November 1996.

6. The retail cellular market encompasses any cellular provider that can offer cellular service to a customer. This can be accomplished by both wholesale providers and resellers, who purchase capacity and the ability to connect to the local exchange from the

3

wholesalers. Thus, all cellular providers - both resale and wholesale - are competitors in the retail market.

7.  PRTC/CT has held at least a seventy (70%) to ninety (90%) percent market share of the wholesale cellular market since 1986. CellularOne, the only other wholesale provider of cellular capacity since approximately 1993-1994, maintains the remaining share. Thus, PRTC/CT holds a monopoly power position in the wholesale cellular market.

**IV.  Statement of Facts**

8.  In 1986 ACS and PRTC subscribed a Wholesale Service Agreement granting ACS the right to resell cellular telephone numbers and services for PRTC's cellular network.

9.  Between 1986 and 1992 ACS grew to become a company with yearly revenues in excess of $11,000,000.00 and over 10,000 cellular subscribers. ACS' clientele represented approximately twenty percent (20%) our of a total reseller's subscriber base of 50% of the cellular users of PRTC's network. ACS' business achievements have been recognized throughout the United States by reaching the select group of the Inc. 500 companies.

10.  Since 1990, PRTC - a facilities-based carrier - and through a concerted effort with its department and/or affiliated CT, grew to become a competitor to resellers for retail cellular users in the marketplace of Puerto Rico.

11.  Since 1992, and to this date, PRTC and CT have consistently engaged in a concerted effort to eliminate, for their own benefit, free and open competition in the cellular market in Puerto Rico by way of offering and incurring in discriminatory, unfair and unjust pricing, tariffs, rates or charges, practices and services, affecting the competition process in the marketplace and making it impossible for competitors, in this case ACS, to have a fair

opportunity to maintain its competitiveness in the cellular phone marketplace by way of offering competitive tariffs and services to its customers. Before that time, PRTC used to extend to ACS the same promotional offers as to its retail customers.

12. On or around 1992, PRTC/CT started to violate the original tariff established in 1986 under a public hearing process. This tariff clearly stated that resellers would be billed on a second by second basis and the total minutes billed on the entire billing cycle would be rounded up to the next minute. However, beginning in 1993, PRTC/CT without prior notification or consent, began to invoice ACS on the basis of six second rounding increments. In addition, beginning on or around August 1996, PRTC/CT extended promotional incentives to resellers' new subscribers on the basis of a full minute rounding formula arbitrarily established by PRTC/CT. ACS was not informed about this prior to the effective date of said incentive; but found out after receiving customer complaints.

13. On or around July 1993, PRTC/CT announced to ACS its new wholesale cellular tariffs. These wholesale tariffs proved to be non-competitive when compared to the retail tariffs and bundled services offered directly by PRTC/CT to potential customers. PRTC/CT devised a scheme by which certain cellular services, i.e., airtime, voicemail, security plan, etc., were bundled with several tariffs, some of said services were offered at no charge. Said services were bundled in the monthly access charge invoiced. PRTC/CT did not extend these bundled services with ACS' tariffs but rather, ACS was charged for each one of said services. As a consequence, ACS was charged a higher monthly rate for these services (monthly plus bundled services) than PRTC/CT's direct customers.

14. Furthermore, PRTC/CT offered its retail customers rates which were not afforded to ACS. Additionally, PRTC/CT's customers with excellent credit were afforded cellular activation at no charge when said transaction was made directly at PRTC/CT' offices or at their authorized dealers' offices. This, while charging ACS for the cellular activation of all its customers.

15. Since the beginning of 1997, PRTC/CT began offering service packages at new rates below resellers' costs. In the case of the digital services packages, these traduced negative when the benefit of the first minute free on all incoming calls are incorporated. PRTC/CT promised ACS a competitive tariff for digital cellular phones and was notified in June 1997 that its existing promotional tariff would be the basis for digital rates. However, as of October 10, 1997 PRTC/CT had not stated whether ACS would be extended the first minute on incoming calls at no charge.

16. In addition to ACS being forced out of the cellular marketplace the aforementioned price discrimination practices by PRTC/CT, among other, PRTC/CT further failed to adequately control the cellular fraud which affected its network. This, in breach of the existing contract, of industry standards and in gross negligence of due care in its obligations and responsibilities.

17. Specifically, the fraud consisted mainly of the theft of the cellular identification numbers of clients' units for its unauthorized us. This took place through the theft of the electronic serial number assigned to the cellular units which were subsequently used to fraudulently gain access to the cellular network to make unauthorized calls. Therefore, PRTC whether because of lack of adequate equipment maintenance or operation of its network -

6

negligently permitted unauthorized calls on account of ACS' clients, thereby causing severe and grave damages to ACS.

18. Therefore, any fraud claims made by ACS is a direct result of the unauthorized access to the PRTC network which at the time of the facts PRTC exercised control in its entirety.

19. On or about May 1993, the cellular codes for bona-fide cellular customers for accessing cellular networks were being stolen through electronic means, or directly from the telecommunications' carrier computer system, resulting in customer's complaints because of the fraudulent calls being invoiced to them. ACS had no control over PRTC/CT's cellular network. However, due to PRTC/CT's gross negligence, the claims due to fraud soared above industry standards, a situation which was exacerbated in the case of ACS. ACS' invoices from PRTC/CT included fraudulent calls, which had to be analyzed and claimed to PRTC/CT for the corresponding credit; however gross negligence and discriminatory treatment by PRTC/CT towards ACS caused ACS grave and irreversible damages. These damages include, but are not limited to, increased payroll due to fraud; credit claims for fraudulent calls unjustly denied by PRTC/CT; and loss of customers due to fraud.

20. PRTC/CT's breach of contract and gross negligence consisted of failure to promptly install adequate or industry-proven anti-fraud systems in its cellular network. Furthermore, PRTC/CT failed to establish adequate security measures in its cellular operations center which allow any PRTC/CT employee to access the cellular access codes in the PRTC/CT network.

21. ACS requested credits to PRTC on behalf of their clients for fraudulent or unauthorized calls. ACS would give its clients credits and would request such credits to PRTC.

In all, PRTC granted over $5,000,000.00 dollars in fraud credits to ACS, but denied without any justification or valid reason credits in the amount of $1,334,204.62.

22. Since PRTC was controlling the network, it was responsible for establishing the proper standards of maintenance and operation to avoid the fraudulent or unauthorized use of the phones used by ACS' clients.

23. The Agreement between PRTC and ACS did not provide any particular provision related to fraud claims. Notwithstanding, PRTC's acceptance of ACS' claims and requests for credit adjustments for such claims in an amount exceeding $5,000,000.00 dollars, make it responsible to grant said credit for the claims denied in the amount of $1,334,204.62

24. PRTC/CT required ACS to submit fraud claims within a sixty (60) to ninety (90) day period after invoice date. However, in a bad faith effort to push ACS out of business PRTC/CT did not establish a clear policy or guidelines on the criteria to be used in processing and granting credit on fraud claims. PRTC/CT's system as implemented was for a long period of time completely subjective. PRTC/CT analyzed and adjudicated ACS' claims in a period which grossly exceeded the ninety (90) day period within which PRTC/CT demanded ACS to submit fraud claims. On information and belief, PRTC/CT's retail customers did not suffer the same restrictions imposed on ACS. PRTC/CT placed no time limit on retail customer's ability to claim fraud. PRTC/CT provided retail customers credit for fraud claims without impediments.

25. Meanwhile, PRTC/CT continued to devise ways to push ACS out of business and has repeatedly attempted to coerce ACS into signing a new agreement to replace the existing contract between the parties. The proposed new agreement contained terms and conditions that are less favorable to ACS, for example: ACS would not be able to transfer a subscriber to

8

another cellular carrier before providing written notification to PRTC/CT; ACS would be obligated to pay invoices within thirty (30) days even though there might be disputed amounts; the proposed contract term was six (6) months and PRTC/CT could thereafter refuse to renew the agreement with thirty (30) days prior written notice (the existing contract does not have a set term); (without said contract ACS would have no clients). ACS would have to provide PRTC/CT with certain private information about ACS' customers; PRTC/CT could unilaterally rescind the contract and contact ACS' subscribers directly to offer their services, this without any compensation to ACS for taking possession of its property in the form of the customer base.

26.     PRTC/CT's motive behind the aforementioned acts were to affect fair competition process in the marketplace and to specifically, obtain absolute control of ACS' customer base thereby eliminating ACS from the market (as achieved with other resellers) preventing ACS from moving its customer base to PRTC/CT's only facilities-based 800Mhz cellular competitor in Puerto Rico.

27.     This situation, as well as the other discriminatory and unfair practices, has been brought to PRTC/CT's attention on many instances to no avail.  On the contrary, PRTC/CT continued to subject ACS to additional pressure, which in the fraud claims area represented that PRTC/CT denied credits in the sum of $788,000.00 that were claimed by PRTC/CT as an outstanding debt of ACS.

### V.     First Cause of Action

28.     The allegations contained in the preceding paragraphs 8 to 27 are fully restated herein as if fully transcribed.

29. PRTC/CT's discriminatory and unlawful actions in the form of unfair and unjust prices, tariffs, charges, rates, services, practices and policies, made competitors, specifically in this case ACS, unable to remain competitive in the cellular phone marketplace by their inability to present adequate and competitive pricing and services to both existing and potential customers. As a result, ACS has identified the loss of over 2,300 subscribers between 1993 and 1996. ACS' market-share plummeted from approximately 20% of PRTC/CT's total subscribers as of December 31, 1992 to 3% as of December 31, 1996. This loss was exclusively the result of discriminatory pricing schemes, practices and administrative policies taken by PRTC/CT to eliminate ACS from the cellular phone marketplace. In fact, many of the customers lost by ACS became customers of PRTC/CT. These actions by PRTC/CT are in violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. §201(b) and §202(a), which declares such conduct as unlawful and, the Federal Communications Commission's Rules and Regulations, 47 C.F.R. §20.12(b), which require a common carrier to permit unrestricted resale of its services. All these actions and violations by PRTC/CT have caused ACS to suffer damages.

**VI.     Second Cause of Actions**

30. The allegations contained in the preceding paragraphs 8 to 29 are fully restated herein as if fully transcribed.

31. PRTC/CT's concerted and intended actions and practices, in the form of unfair and unjust prices, tariffs, charges, rates, services, practices and policies, to attempt monopolization of communications services, specifically the cellular phone market, interfere with the natural flow of commerce substantially affecting and restricting free and pen competition in said marketplace. As a result, ACS has been unable to maintain its

competitiveness in the cellular phone marketplace by its inability to present adequate and competitive pricing and services to both existing and potential customers and, has suffered damages. Other resellers have also been seriously affected by these actions. PRTC/CT's actions are in violation of Antitrust Laws, specifically, the Sherman Act, 15 U.S.C. §1-7; the Clayton Act, 15 U.S.C. §12-27, which prohibits concerted and/or intended actions and practices in the form of discriminatory, unfair, and unjust prices, tariffs, rates or charges, services or regulations to attempt and/or having the effect of interfering with interstate commerce restricting free and open competition; the Robinson-Patman Price Discrimination Act, 15 U.S.C. §13(a), 13(b), 21(a), which prohibits price discrimination between different purchasers of the same commodity where the effect of such discrimination may be substantially to lessen competition; and the Puerto Rico Anti-Monopoly Act, 10 L.P.R.A. §260 et seq.

**VII.    Third Cause of Action**

32.    The allegations contained in the preceding paragraphs 8 to 31 are fully restated herein as if fully transcribed.

33.    PRTC/CT's unlawful and discriminatory actions taken against ACS as identified seek to eliminate independent competition in the cellular retail market attempting to monopolize the retail cellular market by charging resellers an unfairly high, above market-price for wholesale services and/or access to cellular capacity. PRTC/CT has abused its monopoly power position in the wholesale cellular market by this conduct, because access to cellular capacity is necessary for resellers to compete in the retail market, in which PRTC/CT also competes. By charging this unfairly high above-market price for access, and at the same time providing cellular services at promotional or other unreasonably low rates to retail customers

that ACS and other resellers compete to serve, PRTC/CT's resale competitors in the retail market cannot fairly compete with it. PRTC/CT's anticompetitive conduct has harmed and will continue to harm competition by forcing ACS and other resellers out of the retail cellular market. This unfairly exclusionary conduct will likely have the effect of raising prices and restricting output in the retail market to the detriment of cellular customers. PRTC/CT's conduct constitutes monopolization in violation of the Sherman Act, 15 U.S.C. §2, et seq. and the Puerto Rico Anti-Monopoly Act, 10 L.P.R.A.§260, et seq.

### VIII.  Fourth Cause of Action

34.     The allegations contained in the preceding paragraphs 8 to 33 are fully restated herein as if fully transcribed.

35.     PRTC/CT's unlawful and discriminatory actions taken against ACS as identified, attempt to monopolize the retail cellular market and eliminate independent competition in that market. PRTC/CT has the specific intent to monopolize the relevant market. PRTC/CT's attempt to monopolize the retail cellular market has a dangerous probability of success, in that PRTC/CT has monopoly control over the wholesale market. Access to a wholesale provider is necessary for resellers including ACS to compete in the retail cellular market. If allowed to restrict this access, PRTC/CT will be able to control the retail market and thus, raise prices and restrict output in that market. PRTC/CT's anticompetitive conduct has harmed and will continue to harm competition by forcing ACS and other resellers out of the retail market. This will likely have the effect of raising prices and restricting output in the retail market to the detriment of cellular customers. PRTC/CT's conduct constitutes attempted monopolization in

violation of the Sherman Act, 15 U.S.C. §2, et seq. and the Puerto Rico Anti-Monopoly Act, 10 L.P.R.A. §260, et seq.

**IX.   Fifth Cause of Action**

36.   The allegations contained in the preceding paragraphs 8 to 35 are fully restated herein as if fully transcribed.

37.   PRTC/CT has monopoly power in the wholesale market, as alleged above, and through its unlawful and discriminatory actions taken against ACS as identified, has unreasonably sought to use its power and control in the wholesale market as a lever to gain an unfair competitive advantage and foreclose competition in the retail market.  PRTC/CT's anticompetitive conduct has harmed and will continue to harm competition by forcing ACS and other resellers out of the retail market.  This will likely have the effect of raising prices and restricting output in the retail market to the detriment of cellular customers.  PRTC/CT's conduct constitutes attempted monopolization in violation of the Sherman Act, 15 U.S.C. §2, et seq. and the Puerto Rico Anti-Monopoly Act, 10 L.P.R.A. §260, et seq.

**X.   Sixth Cause of Action**

38.   The allegations contained in the preceding paragraphs 8 to 37 are fully restated herein as if fully transcribed.

39.   As the monopoly provider of wholesale cellular services in the Puerto Rico cellular market, PRTC/CT's control of wire-line local exchange facilities constitutes an essential facility for the resale of cellular services.  PRTC/CT has misused this essential facility by unreasonably denying access to its facilities on reasonable terms, thereby seeking to eliminate competition in the resale market.  Because of the substantial economic and regulatory barriers

(FCC licensing) for entry into the wholesale market, ACS and other resellers cannot practically or reasonably duplicate this essential facility. PRTC/CT's conduct with respect to this essential facility. PRTC/CT's conduct with respect to this essential facility constitutes monopolization and/or attempted monopolization in violation of the Sherman Act, 15 U.S.C. §2, et seq. and the Puerto Rico Anti-Monopoly Act, 10 L.P.R.A. §260, et seq.

**XI.     Seventh Cause of Action**

40.     The allegations contained in the preceding paragraphs 8 to 39 are fully restated herein as if fully transcribed.

41.     PRTC/CT's unlawful and discriminatory actions taken against ACS as identified are in violation of pendent state law, among them, state antitrust laws, 10 L.P.R.A. §5141, breach of contract, 31 L.P.R.A. § 3371 et. seq, state law 31 L.P.R.A. § 5141 and state law regulations on telecommunication public services.

**XII     Eighth Cause of Action**

42.     The allegations contained in the preceding paragraphs 8 to 41 are fully restated herein as if fully transcribed.

43.     PRTC incurred in a breach of contract by illegally disconnecting the service on April 1, 1998 and by not crediting payments in the amount of $353,674.82 to ACS' account.

**XIII Ninth Cause of Action**

44.     The allegations contained in the preceding paragraphs 8 to 43 are fully restated herein as if fully transcribed.

45.     PRTC filed a proof of claim before the bankruptcy court - case number 98-07437 *In re: Advanced Cellular Systems, Inc.* –for the amount of $1,655,391.96. Notwithstanding, the

Bankruptcy Court – affirmed by the District Court – determined that PRTC should credit ACS the amount of $2,043,480.27. Therefore it dismissed PRTC's proof of claim in its entirety. Based on said determination, ACS overpaid PRTC the amount of $388,088.31 which should be credited to ACS.

46.   These account receivables constitute a duty under the Wholesale Service Agreement and non payment constitutes a breach of contract.

XIV **Tenth Cause of Action**

47.   The allegations contained in the preceding paragraphs 8 to 46 are fully restated herein as if fully transcribed.

48.   Notwithstanding its obligations therein, PRTC engaged in anticompetitive practices designed to drive ACS from the market. As part of this concerted effort, PRTC and Celulares Telefónica were grossly negligent in managing ACS's accounts – as well as its own cellular network.

49.   PRTC did not maintain its network properly nor did it set adequate controls - to prevent third parties from tapping into it to use the numbers of bonafide clients. Therefore, PRTC must credit ACS for fraud claims unjustly denied.

50.   The books kept by PRTC of ACS's account were inadequate. This, inasmuch as it is obliged to credit certain sums of monies received that were never credited.

51.   ACS is also entitled to a credit from PRTC since it was charged for rounding of cellular airtime at 6 seconds increments in breach of the tariff agreed.

52.   Finally, PRTC disconnected ACS' lines, and immediately charged it for services. However when ACS requested the billing tapes to collect from the end users, PRTC remained

unmoved. It insisted on payment but did not deliver to ACS the necessary tapes with the information to collect from end users. Hence the amounts charged for this period are also to be credited to ACS.

53. PRTC/CT is liable for the damages caused to ACS due to PRTC's illegal disconnection of ACS's lines under the false pretense that it was owed monies - when in reality it was defendant who owed monies to plaintiff.

**XII. Relief**

54. Plaintiff ACS respectfully requests this Honorable Court to grant Judgment against defendants for:

a. All damages sustained by ACS due to PRTC/CT's unlawful and discriminatory actions; violation of the Federal Communications Act of 1934 and for antitrust violations as described and/or any pendent state law, which are conservatively estimated at six and one half million dollars ($6,500,000.00);

b. Treble damages sustained by ACS as identified and pursuant to 15 U.C.S. §15(a) and pendent antitrust state law, in the total sum of nineteen and one half million dollars ($19,500,000.00);

c. In collections of monies PRTC owes ACS the amount of Three Hundred Eighty Eight Thousand Eighty Eight Dollars and Thirty One Cents ($388,088.31) plus accumulated interests –per the terms of the contract in the amount of $1,208,540.01 for a total of $1,596,628.32

    d. All damages for breach of contract caused by PRTC/CT to ACS in the amount of $19,425,000.

    e. Plaintiff requests any other remedy which the court deems appropriate under any other Federal or State law;

    f. Plaintiff requests pre-judgment and post-judgment interests in all sums awarded by this Honorable Court, as well as costs and attorney's fees incurred in the case of caption;

    g. Plaintiff requests trial by jury.

RESPECTFULLY SUBMITTED.

I hereby certify that on December 21st, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Ricardo F. Casellas, Esq., Ricardo L. Ortiz Colón, Esq. and Mario Arroyo Dávila.

In San Juan, Puerto Rico, this 21st day of December 2006.

    s/ Jairo Mellado-Villarreal
    Jairo Mellado-Villarreal, 208112
    Attorney for plaintiff Advanced Cellular Systems
    MELLADO & MELLADO-VILLARREAL
    165 Ponce de León Ave., Suite 202
    San Juan, Puerto Rico  00917-1233
    Tel. 787-767-2600/Fax 787-767-2645
    E-mail jmellado@mellado.com