IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ADVANCED CELLULAR SYSTEMS, CORP.<br><br>    Plaintiff<br><br>    v.<br><br>PUERTO RICO TELEPHONE COMPANY;<br>CELULARES TELEFONICA<br><br>    Defendants | Civil No. 97-2511 (JAF)<br><br>Civil Action:  Antitrust Laws;<br>Discriminatory  Pricing; Breach of Contract;<br>Tort; Collection of Monies<br><br>Jury Trial Demanded |

**ACS's MOTION IN COMPLIANCE WITH ORDER TO SHOW CAUSE**

TO THE HONORABLE COURT:

Comes now plaintiff Advanced Cellular Systems, Corp. ("ACS"), through the undersigned attorneys and respectfully states and prays as follows:

I.    **Introduction**

The case of caption was never officially dismissed[1] and yet the case was not officially opened either – it remains dormant for administrative purposes.  This Honorable Court has ordered ACS to show cause why the case of caption should not be dismissed for lack of diligent prosecution.  Hence, the burden now shouldered by ACS entails showing why it did not prosecute the case from March 29th, 2000[2] until December 21st, 2006.[3]  We hereby respectfully oblige.

II.    **Discussion**

---

[1] Docket 73, page 2, line 18.

[2] The case was removed to bankruptcy court and later remanded, a decision that was affirmed on said date.

[3] Date when ACS requested authorization to amend the complaint.

> *A.      Motions to Dismiss were Submitted and Discovery had been Stayed.  There was little else to do but Wait for the District Court's Decision.*

In the instant case, and in terms of procedure, the parties had nothing else to do pending several decisions of the District Court (then under the care of Honorable Judge Gierbolini).  At that moment in time, PRTC refused to cooperate in discovery and filed for a protective order. This party opposed.[4]  However, the District Court never decided the issue and the discovery was effectively stayed by PRTC.  ACS could conduct no discovery pending the District Court's decision – a decision that never materialized.  Furthermore, a motion to dismiss ACS's antitrust claim was filed by PRTC and was duly opposed.  Again, the issue remained pending in the docket.[5]

When the case was remanded by the Bankruptcy Court the District Court did not re-open the case - it remained closed for administrative purposes.  Technically ACS could not prosecute a case that remained shut.  Thus, on the one hand ACS could not prosecute further the issues of the case because of the stay declared by the adverse party pending and submitted for the decision of the District Court.  On the other hand, there was no action that ACS could take because the case remained closed for administrative purposes.  In sum, the instant case remained waiting for the decision of the District Court and up and until these decisions materialized, the case could not move forward.

---

[4] The motions filed were: *Motion Seeking to Amend Prior Fed. R. Civ. P. 12(b)(6) Motion and Supplemental Motion and for Stay of Discovery* filed by PRTC on April 2, 1998 **- Docket 23;** *Opposition to Defendants' Motion Seeking Leave Amend Prior Fed. R. Civ. P Rule 12(b)(6) Motion and Supplemental Motion and for Stay of Discovery* filed by ACS on May 7, 1998 **- Docket 31.**

[5] The motions filed were: *Motion to Dismiss and Supporting Brief* filed by PRTC on December 17, 1997 - **Docket 6;** *Opposition to Motion to Dismiss* filed by ACS on January 27, 1998**; Docket 13;** *Defendants' Reply to Opposition to Partial Motion to Dismiss and Supplemental Motion to Dismiss* filed by PRTC on February 20, 1998 - **Docket 16;** *Opposition to Defendant's Supplemental Motion to Dismiss and Response to Defendant's Reply to Plaintiff's Opposition to Partial Motion to Dismiss* filed by ACS of April 1, 1998 - **Docket 20.**

B.          *ACS Prosecuted the same Issues of the Case of Reference in Bankruptcy Court.*

ACS did prosecute the case against PRTC with diligence.  However, it prosecuted the case in the Bankruptcy Court while waiting for the District Court.  Even though the Bankruptcy Court limited the case to consider debtor's objection to the allowance of the Proof of Claim filed by PRTC/CT, these were related to invoices and payments during the period from 1993 to 1998, which is also an issue in this case.  Hence, the proceedings before bankruptcy reviewed ACS's business relationship with PRTC.

The determinations made during these bankruptcy proceedings were pertinent to the issues before this Honorable Court and are readily available to be used in the instant case as recommendations.  Moreover, since the parties already conducted extensive discovery in the bankruptcy case – discovery that PRTC had unilaterally stayed before the District Court - the need for discovery to continue litigating the instant case would be minimal.

The findings of the Bankruptcy Court[6] were based on a three day evidentiary hearing.  At the conclusion of said trial and the ensuing appeals – as they stand today[7] - the bankruptcy court's findings provide the following recommendations of fact to this Honorable Court:[8]

> *i.  PRTC had a duty to maintain its Cellular Network but did not.*
> PRTC did not maintain its network properly nor did it set adequate controls - to prevent third parties from tapping into it to use the numbers of bonafide clients. [9]

---

[6] Case number 98 – 07437 *In re Advanced Cellular Systems, Inc.*

[7] The judgment issued by the bankruptcy court was modified by judgment from the U.S. Court of Appeals on March 28, 2007.  However, the remaining determinations from the bankruptcy court remained untouched by said order.

[8] See *Opinion and Order* by Judge Lamoutte dated March 8, 2002.

[9] With regard to the fraud claims, the US Circuit Court of Appeals overruled the decision entered by the Bankruptcy Court.  **Although** the Circuit Court determined that ACS should bear the **loss** for the fraud since it **assumed** the risk when it signed the contract, several determinations of facts made by the Bankruptcy Court remained in place, as follows:

> ### ii. PRTC received payments from ACS but failed to credit them
> It was also determined that the books kept by PRTC of ACS's account were inadequate. This, inasmuch as it is obliged to credit certain sums of monies received that were never credited.[10]

---

Fraud claims caused significant losses to ACS. ACS credited the customer for the fraud claims but could not recoup the same because it was not provided by PRTC with a detail of rejected claims. ACS would give the credit to its client before the PRTC gave ACS credit for the fraud claim. ACS established a fraud claims department to handle the increase number of fraud claims reported by its clients. ACS corroborated the claims by calling the suspect numbers and inquiring whether they knew the owner of the number. Mr. Negrette testified that ACS **exercised the** utmost due diligence in verifying the fraud claims before submitting them to PRTC. The agreement between the parties implies the obligation of PRTC to maintain proper standards of maintenance and operation and to exercise reasonable supervision. The evidence before the court is that ACS exercised due diligence in the processing of fraud claims and that any misuse was by unauthorized users. PRTC was unable to properly maintain its network by not controlling the unauthorized use of stolen HEX numbers, either because the technology was not available or not timely procured.

On June 30, 1996 the Office of the Comptroller of the Commonwealth of Puerto Rico issued and audit to PRTC. Some of the findings of said reports mirror the complaints filed by ACS to the PRTC. Some of these are, the cellular fraud manifested itself in 1992, and that PRTC did not take timely action to procure computerized equipment and programs to combat cellular fraud. It also states that "it is the responsibility of management PRTC to take effective control measures to detect and reduce on a timely manner the incidence of cellular fraud." The control measures taken by PRTC were clearly not effective.

In 1986, when the parties entered into the Agreement, cellular fraud was not a problem. PRTC has control over its cellular network and had the duty to maintain and operate the same in servicing the agreement with resellers such as ACS. PRTC had a duty to maintain and control its networks which is directly related to the services it provides ACS as a reseller. Failing to provide adequate controls to prevent fraudulent usage of its own network should **not** result in ACS bearing the cost of the breach.

[10] The bankruptcy Court made several recommendations that this Honorable Court can consider in the following causes of actions filed by ACS. This recommendations were not overruled by the decision entered by the US Circuit Court on March 28, 2007 – case number 06-1332.

 **PRTC's violation of Federal and State Antitrust Laws** – Sherman Act, 15 U.S.C. Sections 1-7;the Clayton Act, 15 U.S.C. Sections 12-17 which prohibits concerted and/or intended actions and practices in the form of discriminatory, unfair and unjust pricing, tariffs, rates or charges, services or regulations that attempt and/or having the effect of  interfering with commerce restricting free and open competition; **Puerto Rico Anti-Monopoly Act, 10 L.P.R.A.  Sections 260 et seq.,**

The District Court found that "PRTC/CT's system of invoicing and accounting of payments made and credited was not accurate and reliable. Also, ACS was not notified how the payments made were applied; the invoices showing the payments made did not include the check number nor the particular amount applied" BK Op and Order  p .17 . As a result it was impossible for ACS to reconcile account balances owed to PRTC/CT. In fact, it was only through a very extensive discovery process that ACS was able to determine and prove that  "payments (were made)  in the amount of $353,674.82 were not credited by PRTC/CT" Bk Op and Order p.19.
"After a credit was given (for a fraud claim) the detail was not provided to ACS". Bk Op and Order p. 5.
PRTC/CT's billing had significant errors, such as, "duplicated calls, incorrect roaming charges, billing tapes not readable, errors in the billing tapes, taxes for 911 services on disconnected lines, billing errors on account of changes **in** area codes". BK Op and Order p. 9.

**PRTC's violation of  Federal Communications Acts and FCC Regulations**

Federal Communications Act of 1934 as amended, 47 28 U.S.C.. Sect. 201,(b) and 202 (a) which declares unlawful and discriminatory any charge or practice by a common carrier that is unfair, unjust or unreasonable and the Federal Communications Commission Rules and Regulations, 47 C.F.R. Section 20.12 (b) (formerly 47 C.F.R. Section 22.90(e)) which requires a common carrier licensee to permit unrestricted resale of its services.

The District Court found that "PRTC/CT's system of invoicing and accounting of payments made and credited was not accurate and reliable.  Also, ACS was not notified how the payments made were applied; the invoices showing the payments made did not include the check number nor the particular amount applied" BK Op and Order  p .17 . As a result it was impossible for ACS to reconcile account balances owed to PRTC/CT. In fact, it was only through a very extensive discovery process that ACS was able to determine and prove that "payments (were made) in the amount of $353,674.82 were not credited by PRTC/CT". Bk Op and Order p.19.  "After a credit was given ( for a fraud claim) the detail was not provided to ACS".  Bk Op and Order p. 5.
However, ACS was required to submit fraud claims detailing each specific call objected. The fact that ACS was not provided with a detail of the fraud credits granted on each particular call objected was an unreasonable practice on the part of PRTC since it became impossible for ACS to collect said calls from its customers.

PRTC/CT's billing had significant errors, such as, "duplicated calls, incorrect roaming charges, billing tapes not readable, errors in the billing tapes, taxes for 911 services on disconnected lines, billing errors on account of changes in area codes". BK Op and Order p. 9.

**PRTC/CT Breach of Contract  -**

The District Court found that "PRTC/CT's system of invoicing and accounting of payments made and credited was not accurate and reliable.  Also, ACS was not notified how the payments made were applied; the invoices showing the payments made did not include the check number nor the particular amount applied".  BK Op and Order  p. 17. In fact, it was only through a very extensive discovery process that ACS was able to determine and prove that "payments (were made)  in the amount of $353,674.82 were not credited by PRTC/CT ". Bk Op and Order p.19.
"After a credit was given (for a fraud claim) the detail was not provided to ACS".  Bk Op and Order p. 5.
PRTC/CT's billing had significant errors, such as, "duplicated calls, incorrect roaming charges, billing tapes not readable, errors in the billing tapes, taxes for 911 services on disconnected lines, billing errors on account of changes in area codes". BK Op and Order p. 9.
PRTC/CT policy of requiring that fraud claims be presented in a 90 day timeframe was a bad faith practice  since
"it took PRTC well in excess of 90 days( to process an  ACS fraud claim) was a good indication that it (90 days) for a wholesaler  was not reasonable". Bk Op and Or. P. 12.
 The Court concluded that "it (PRTC) had no right under the agreement to retain the billing tapes for periods over which ACS provided the service to its own customers. By doing so, PRTC engaged in an automatic set off of amounts allegedly owed by ACS." BK Op and Or. P. 18-19.

"The Agreement between the parties (Joint Exhibit #1- Wholesale Service Agreement Section V. F) implies the obligation of PRTC to maintain proper standards of maintenance and operation and to exercise reasonable supervision. PRTC was unable to properly maintain its network by not controlling the unauthorized use of stolen Hex numbers either because the technology was not available or not timely procured". Bk  Op and Order p. 13.

"On June 30, 1996 the Office of the Comptroller of the Commonwealth of Puerto Rico issued **an** audit to PRTC. Some of the findings of said reports mirror the complaints filed by ACS to the PRTC.  Some of these are, the cellular fraud manifested itself in1992, and that PRTC did not take timely action to procure computerized equipment and programs to combat cellular fraud.  It also states that it is the responsibility of management PRTC to take effective control measures to detect and reduce on a timely manner the incidence of cellular fraud. The control measures taken by PRTC were clearly not effective." Bk Op and Or. p. 13

> *iii. PRTC improperly invoiced airtime rounding in 6 seconds increments instead of billing to the next second*

ACS is also entitled to a credit from PRTC since it was charged for rounding of cellular airtime at 6 seconds increments in breach of the tariff agreed.

> *iv. PRTC withheld billing tapes from ACS while at the same time demanding payment*

Finally, PRTC disconnected ACS' lines, and immediately charged it for services. However when ACS requested the billing tapes to collect from the end users, PRTC remained unmoved.  It insisted on payment but did not deliver to ACS the necessary tapes with the information to collect from end users.   Hence the amounts charged for this period are also to be credited to ACS.

Therefore, while ACS had no way of prosecuting a case that awaited several decisions of the District Court, it prosecuted its case diligently before the bankruptcy court, which benefited the final resolution of the case of caption.

Once this Honorable Court confirmed the Bankruptcy Court's decision,[11] ACS moved to amend the complaint in the instant case according to the findings of the Bankruptcy Court.

C.    *Since the Procedural State of the Case of Caption Cannot be Blamed on ACS, Dismissal as a Remedy is Unwarranted.*

Under Rule 41 (b) FRCP, the Court has the authority to dismiss a case for want of prosecution. Notwithstanding, it has been held that said sanction is warranted only when lesser sanctions are inappropriate and/or the conduct observed by plaintiff is extreme and can cause damages to the opposing party.[12]   In the instant case the conduct of ACS cannot be

---

The Bankruptcy Court concluded through the evidentiary hearings that "incorrect rounding of air time usage in the amount of $300,062.95" **(Bk Op and Or. P. 19)**  should be deducted from the Proof of Claim since "rounding air time to six second was against the tariff agreement which required actual time rounded to the next second "By Op and Order p. 18.  The original Complaint in District Court covered over billing due to invoicing  whereby each call would be rounded up to the next six second increments (ie. 6,12,18,24,30,36,42,48,60 ).

[11] This Honorable Court confirmed the Opinion and Order entered by the Bankruptcy Court on January 9th, 2006 case number 02-1908.

[12] "A district court unquestionably has the authority to dismiss a case with prejudice for want of prosecution; this power is necessary to prevent undue delays in the disposition of pending cases, docket congestion, and the

considered as a lack of interest to prosecute its case nor can PRTC claim that it has unduly

suffered damages.  As previously stated – and with all due respect - ACS had little to

prosecute in the instant case while the District Court decided on whether to act upon the order

to remand and the discovery issues, as well as the motion to dismiss filed and replied to.

Moreover, PRTC cannot be said to have unduly suffered damages since it unilaterally stayed

the discovery and filed the motion to dismiss – but if it understood that the case was not being

prosecuted diligently PRTC could have requested the dismissal of the case then, but never did

on such basis.

Moreover, it has been held that when there is no notice from the court that the case

could be dismissed (as is the case now pursuant to the show cause order), if no action is taken,

plaintiff has no way of knowing that its case is at risk of being dismissed.[13]

---

possibility of harassment of a defendant. See <u>Link v. Wabash R. Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)</u>; <u>9 Wright & Miller, Federal Practice and Procedure s 2370 at 199</u>. Because of the strong policy favoring the disposition of cases on the merits, see <u>Richman v. General Motors Corp., 437 F.2d 196, 199 (1st Cir. 1971)</u>, we, and federal courts generally, have frequently warned that dismissals for want of prosecution are drastic sanctions, which should be employed only when the district court, in the careful exercise of its discretion, determines that none of the lesser sanctions available to it would truly be appropriate.[FN1] See <u>Asociacion de Empleados v. Rodriguez Morales, 538 F.2d 915 (1st Cir. 1976)</u>; <u>Richman v. General Motors Corp.</u>, supra. See also <u>Durgin v. Graham, 372 F.2d 130, 131 (5th Cir. 1972)</u>. But we have not hesitated to affirm dismissals of suits for want of prosecution in appropriate cases. See <u>Pease v. Peters, 550 F.2d 698 (1st Cir. 1977)</u>; Asociacion de Empleados v. Morales, supra; cf. <u>Luis Forteza e Hijos, Inc. v. Mills, 534 F.2d 415 (1st Cir. 1976)</u>.” *Zavala v. Gonzalez Rivera* 53 F.2d 710 (C.A. Puerto Rico 1977).  Such sanctions include a warning, a formal reprimand, placing the case at the bottom of the calendar list, a fine, the imposition of costs or attorneys fees, the temporary suspension of the counsel from practice before the court, and dismissal of the suit unless new counsel is secured.”

“Although our case law gives the district court broad discretion to dismiss a case to further its case management responsibilities, disposition on the merits is favored and we repeatedly have held that a case should not be dismissed with prejudice except “when a plaintiff's misconduct is particularly egregious or extreme,” <u>*Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101, 107 (1st Cir.1995)</u>. We have observed more than once that [i]n all the cases in which we have upheld a dismissal for want of prosecution, we have found either extremely protracted inaction (measured in years), disobedience of court orders, ignorance of warnings, contumacious conduct, or some other aggravating circumstance.<u>*Cosme Nieves v. Deshler*, 826 F.2d 1, 2 (1st Cir.1987)</u>; *see also* <u>*Benjamin*, 57 F.3d at 108</u>; <u>*Estate of Solis-Rivera v. United States*, 993 F.2d 1, 2 (1st Cir.1993)</u>.”  *Ortiz-Anglada v. Ortiz-Perez*, 183 F.3d 65 (C.A.1 (Puerto Rico),1999).

[13] “Although the case may have been progressing more slowly than ideal, and the long gap following the last docketed action understandably troubled the court, it must bear some responsibility for having failed to impose

Finally, it has been determined that earlier delays in the case do not matter if the case is being prosecuted diligently in the present. That is, prior delays should not be taken into consideration to dismiss the case, but only the current procedural status.[14] Therefore, even assuming *in arguendo* that ACS could have prosecuted the case of caption – under the aforementioned conditions – if this Honorable Court (while under Hon. Judge Gierbolini) did not file an order to show cause why the case was "not being prosecuted", now that the case is being prosecuted diligently it should not take any adverse action against plaintiff.[15]

---

deadlines through a scheduling order. Plaintiff had no reason to suspect her case was at risk, and plaintiff responded promptly to the unexpected dismissal with a motion to reconsider it. *See Robson v. Hallenbeck,* 81 F.3d 1, 4 (1st Cir.1996) ("[A]bsence of warning that the court was considering dismissal ... may be a pertinent factor in evaluating a dismissal, especially if the conduct in question did not violate a clear preexisting requirement."); *Cosme Nieves,* 826 F.2d at 2 ("[Plaintiffs] responded immediately to the only warning they received-the sua sponte dismissal-with a motion to the court."). *Ortiz-Anglada v. Ortiz-Perez*, 183 F.3d 65 (C.A.1 (Puerto Rico),1999)." This court, and federal courts generally, have warned that the drastic sanction of dismissal for want of prosecution "should be employed only when the district court, in the careful exercise of its discretion, determines that none of the lesser sanctions available to it would truly be appropriate." *Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710, 712 (1st Cir.1977); *see also Enlace Mercantil Internacional v. Senior Industries*, 848 F.2d 315, 317 (1st Cir.1988). This is a classic case for a lesser sanction. There has been no showing of particular prejudice to the defendants or the court and no deliberate disregard of deadlines. *See Robson,* 81 F.3d at 2-3. Indeed, in the absence of a scheduling order, any action in these circumstances more severe than a warning that plaintiff should activate and expedite her case seems excessive."

[14] "… If the claim presently is being prosecuted with diligence, however, it cannot be dismissed simply because at some earlier time the plaintiff did not act diligently." 9 Fed. Prac. & Proc. Civ.2d § 2370.  "Where plaintiff is presently prosecuting a claim with reasonable diligence, an action cannot be dismissed simply because at some earlier time plaintiff failed to act with diligence. See United States v. Myers, 38 F.R.D. 194, 197 (D.C.1964). However, here Plaintiff has failed to show that he is presently prosecuting his claim with reasonable diligence and in fact, is not prosecuting his claim with reasonable diligence. Since October 19, 1976 when the United States Lines was finally served, Plaintiff has made no attempt to settle the claim nor has he engaged in any discovery whatsoever." *Cristanelli v. U.S. Lines,* 74 F.R.D. 590 (D.C.Cal. 1977). "A presumption of prejudice arises from a failure to prosecute. This presumption is rebuttable but even if there is a showing that no actual prejudice occurred, it is merely a fact to be considered in determining whether the trial court's exercise of discretion was sound. See Air West, supra, at 524, 525."

[15]  "While the delay on the part of plaintiff in filing the Request for Admissions (from June 19, 1959, when Defendant Imhoff filed his Answer, until February 27, 1962) was a serious one and might have been grounds for dismissal if a motion had been made at that time, still no such motion was then made, and, in view of the considerations explained below, the Court feels that plaintiff's delay in filing the motion for summary judgment (from February 27, 1962, to October 23, 1962) was not unreasonable and does not, itself, constitute grounds for dismissal. Where a plaintiff is presently prosecuting his claim with reasonable diligence, the action cannot be dismissed because at some earlier time the plaintiff failed to act with diligence. Rollins v. United States, 286 F.2d 761 (9th Cir. 1961)." *U.S. v. Myers,* 38 F.R.D. 194 (N.D.Cal., 1964) "

        D.      *The Instant Case was Never Dismissed.  Therefore, the Causes of Action were tolled upon the original filing and did not Begin to Count Anew*

When a suit is filed, it has the effect to toll the statutes of limitation. Therefore, in this case the original complaint was filed on October 14, 1997. Since then, no order has been entered dismissing the case; the case remained "dormant" between Bankruptcy Court and this District Court.  Therefore, none of the causes of action are time barred because the case was never dismissed within the period of six (6) years.

> "A suit commenced within the time prescribed by statute tolls a statute of limitations. Accordingly, lapse of time after commencement of the suit does not bar enforcement of the right, even though subsequent proceedings are not taken, issues are not formed, trial is not had, the actual contest over the claim is not concluded, or judgment is not entered, until after the expiration of the statutory period, since it is not required that the action be prosecuted to finality within the prescribed period."  54 C.J.S. Limitations of Actions Sec. 260.

WHEREFORE, ACS respectfully requests that this Honorable Court deem its order of August 2, 2007 as having been duly fulfilled by ACS.

I hereby certify that on August 2nd, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Ricardo F. Casellas, Esq., Ricardo L. Ortiz Colón, Esq. and Mario Arroyo Dávila.

At San Juan, Puerto Rico, this 2nd day of August 2007.

s/Zuleika Llovet-Zurinaga, 201407
P.O. Box 366048
San Juan, PR  00936-6048
Tel. (787) 250-8504/Fax 250-8432
E-mail: zllovet@llovetlopez.com

Jairo Mellado-Villareal 208112
Odalyse Cedeño-Morales, 223103
Attorney for plaintiff Advanced Cellular Systems
MELLADO & MELLADO-VILLARREAL
165 Ponce de León Ave., Suite 202
San Juan, Puerto Rico  00917-1233
Tel. 787-767-2600/Fax 787-767-2645
E-mail: acedeno@mellado.com